UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **LAMONT D. GREENFIELD,** : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **MCDONALD'S CORPORATION,** : <br> Defendant. : | <br><br><br>CIVIL ACTION NO.<br>3:10-cv-40 (VLB)<br><br>September 1, 2011 |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. #23]

### I. Introduction

In this one-count Complaint, Plaintiff LaMont D. Greenfield claims that Defendant McDonald's Restaurants of Connecticut ("McDonald's") wrongfully terminated his employment on the basis of his race and/or color (African American/black) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"). Plaintiff concedes that while on duty, he and a subordinate employee engaged in an altercation that deteriorated into a physical fight in the presence of other employees and customers. Plaintiff claims that his December 27, 2007 termination occurred due to his race and not as the result of his conduct in engaging in a physical fight in contravention of McDonald's employment policy against fighting in the workplace. Plaintiff further alleges that at least a year prior to his physical altercation, two other employees at the same restaurant who were neither black nor African American, were involved in a physical altercation but were not similarly disciplined. Plaintiff seeks damages for the alleged discriminatory conduct.

Currently pending before the Court is a motion for summary judgment for the one-count pursuant to Fed. R. Civ. P. 56(c).

## II. Factual & Procedural Background

A. Plaintiff's Employment with McDonald's

On July 12, 2005 Plaintiff, a black male, started working as a crew member at the McDonald's owned restaurant located at 109 Salem Turnpike, Norwich, Connecticut. [Dkt. #25, Def. Rule 56(a) Stmt. ¶¶3, 17]. At the time of the incident on December 23, 2007, Plaintiff worked as a Second Assistant Restaurant Manager, a salaried management position. *Id.* at ¶¶18, 23. Plaintiff's employment was at will. *Id.* at ¶3.

All McDonald's employees are required to participate in an orientation upon their hiring, which includes a review of McDonald's policies and procedures. *Id.* at ¶4. Each employee verifies that he has completed the orientation by signing a checklist, providing McDonald's with various documents, and receiving copies of various McDonald's policies and procedures. *Id.* at 5.

When Plaintiff began his employment in July 2005 as an hourly crew member, he participated in the orientation process and signed three documents. [Dkt. #25, Def. Rule 56(a) Stmt. ¶6].The first was the checklist upon his completion of the program; The second was an Acknowledgment and Affirmation to Comply with Policies, a document stating that he would comply with all of McDonald's policies and procedures; *Id.* at ¶¶6-7. The third was the "McDonald's Promise," in which he pledged not to fight and to utilize conflict resolution

alternatives without the use of physical force. *Id.* at ¶¶ 6-7, 12-16. An excerpt of the McDonald's promise provides: "I promise that I will not fight with anyone, even if I am provoked. I will find other ways to resolve conflict without using physical force, even if I must enlist help from police." [Dkt. #25, Ex. B-4).

Additionally, Plaintiff received training during his employment on how to deal with other McDonald's employees, specifically instructing him that if an issue arose with an employee, he should pull the other employee aside so it was out of the public's view and/or ask the employee to leave and to call the police if needed. [Dkt. #25, Def. Rule 56(a) Stmt. ¶8]. Lastly, Plaintiff signed and received documents about McDonald's Zero Tolerance Policy Regarding Discrimination and Sexual Harassment. *Id.* at ¶¶9-11. This policy states that: "McDonald's strongly believes that employees... should be treated fairly and without regard to race, color... or any other prohibited basis. This applies to all employment practices.... Discrimination or harassment of a McDonald's employee, whether by another employee, supplier, vendor, or customer, will not be tolerated." [Dkt. #25, Ex. B-3].

On December 23, 2007 between 10 a.m. and 10:30 a.m., Store Manager Brian Gervais left the restaurant. *Id.* at ¶22. During the course of Mr. Gervais's absence, Plaintiff was in charge of the nine to eleven crew members working at that time. [Dkt. #25, Def. Rule 56(a) Stmt. ¶23]. George Greeno, a Caucasian crew member, worked at the "second" drive-thru window area, located in the back of the restaurant. *Id.* at 24.

**At some point, a problem with the orders occurred and Plaintiff advised the employees at the drive-thru to stop taking orders.** *Id.* **at ¶25. Mr. Greeno took another order despite receiving instructions from Plaintiff to do otherwise.** *Id.* **at ¶26. Plaintiff interrupted the order and asked the customer to wait a moment. [Dkt. #25, Def. Rule 56(a) Stmt. ¶26]. Although Defendant disputes it, Plaintiff asserts he then took over the handling of the orders after speaking directly with Mr. Greeno. [Dkt. #34, Pl. Mem. in Opp. to Def. Motion for Summary Judgment, #3, Ex. B, Greenfield Dep. at 109:4-22].**

**Defendant asserts that Mallory Young, another McDonald's crew member, worked in close enough proximity to witness the altercation between Plaintiff and Mr. Greeno. [Dkt. #25, Def. Rule 56(a) Stmt. ¶27, Ex. A-3, Young Aff.]. According to Defendant, Plaintiff got "in [Mr. Greeno's] face," scolding him about his decision to proceed with taking the customer's order. [Dkt. #25, Def. Rule 56(a) Stmt. ¶27, Ex. A-3, Young Aff.]. According to both Mr. Greeno and Ms. Young's statements, Plaintiff supposedly "baited [Mr. Greeno] with terms like 'hit me, hit me." [Dkt. #25, Def. Rule 56(a) Stmt. ¶27, Ex. A-3, Young Aff.; Ex. A-2, Greeno Aff.]. Plaintiff admitted he was unaware of Ms. Young's location in the restaurant at the time of the altercation. He nonetheless asserts that she could not have heard or seen the incident because she was not present when it occurred. [Dkt. #34, Pl. Mem. in Opp. to Def. Motion for Summary Judgment, #3, Ex. B, Greenfield Dep. at 178:14-23].**

**Mr. Greeno then told Plaintiff he was clocking out and leaving. [Dkt. #25, Def. Rule 56(a) Stmt. ¶28]. According to Plaintiff, while walking past Plaintiff, Mr.**

Greeno bumped into the Plaintiff and said "fuck you, nigger." [Dkt. #34, Pl. Mem. in Opp. to Def. Motion for Summary Judgment, #3, Ex. B, Greenfield Dep. at 113:3-14]. Plaintiff asserts that Mr. Greeno then repeated his comment, "fuck you, nigger," to which Plaintiff claims that he responded by telling Mr. Greeno to leave the store, and instructing Mr. Greeno not to "place his hands on him again." *Id.* at 115:4-14. Plaintiff further claims that Mr. Greeno then gave Plaintiff a small push in the chest. *Id.* at 115:16-23; 116:1-4. Plaintiff asserts that immediately after this push, Mr. Greeno grabbed him by the neck, placing him in a headlock with his right arm, choking him. *Id.* at 117:2-20. Plaintiff then wrapped his arm around Mr. Greeno's waist and pushed Mr. Greeno's body into the wall, and both Plaintiff and Mr. Greeno fell to the floor. [Dkt. #25, Def. Rule 56(a) Stmt. ¶29].

This altercation occurred in front of McDonald's employees and customers. [Dkt. #25, Def. Rule 56(a) Stmt., #2, Ex. B, Greenfield Dep. at 102-103.]. Two paramedics who happened to be eating in the restaurant at this time witnessed either some or all of the altercation. According to Plaintiff, they broke up the fight. [Dkt. #25, Def. Rule 56(a) Stmt. ¶30]. Plaintiff then asked the ambulance personnel to call the police. [Dkt. #25, Def. Rule 56(a) Stmt., #2, Ex. B, Greenfield Dep. at 130:12-21]. Mr. Greeno waited outside the restaurant for Mr. Gervais, the store manager to return. [Dkt. #25, Def. Rule 56(a) Stmt. ¶33]. When Mr. Gervais returned he asked both employees to write a statement about what had happened. Both employees provided written statements about the incident. Ms. Young also provided a statement at Mr. Gervais's request. *Id.* at ¶36. Copies of the statements were attached as exhibits to Defendant's Rule 56(a) Statement as

5

Exhibits 1, 2 and 3, respectively. {Dkt. #25}. In his statement, the Plaintiff wrote that Mr. Greeno "walked up to the front counter proceeded to check himself out using bad language I told him if he checks out not return he checks out walks back toward where he came from Bumping me and saying fu nigger, and I told him to leave out of the store he proceeds to get in my face and push me in the chest and advise him to leave again and do not put your hands on me again he did at that time grab me around my neck before I could react and from there we went to the floor in the dish area." (sic) [Dkt 25, Exhibit A-1]. The Plaintiff challenges the date on which Young's statement was given based on the fact that it bears a date after the day he was terminated. McDonald's Operation Manager, Jenna Lisella, stated that McDonald's had the statement in its possession and reviewed it at the time of its decision. [Dkt. #26 Ex. A Lisella Decl. at ¶19]. In addition, Young affirmed under oath that she wrote the statement right after the Incident and submitted it to McDonald's that same day. [Dkt. #26, Ex. A at ¶¶ 4, 8].

**B. McDonald's Termination of Plaintiff's Employment**

After the incident, Plaintiff asked if he could leave for the day. *Id.* at ¶44. Mr. Gervais agreed but stated that he would have to collect Plaintiff's restaurant keys. *Id.* Plaintiff asked Mr. Gervais if turning in his keys indicated that he was fired. Mr. Gervais responded that this was standard procedure. *Id.* at ¶¶45-46.

Mr. Gervais contacted McDonald's Operations Manager Jenna Lisella to discuss the incident. [Dkt. #25, Def. Rule 56(a) Stmt. ¶55]. The two discussed the

statements and what each individual (Plaintiff, Mr. Greeno, and Ms. Young) said had occurred, along with McDonald's stance against fighting in the workplace. *Id.*

Mr. Greeno's statement described the incident, stating that after Plaintiff instructed him to stop taking orders at the drive-thru window, Mr. Greeno "had enough" so he "clocked out and was preparing to leave, when Lamont proceeded to get into a verbal altercation, blocking me from trying to pass him. [Dkt. #25, Ex. A-2]. Mr. Greeno further stated that Plaintiff began screaming in his face, yelling "hit me" while blocking his path to exit, so Mr. Greeno pushed Plaintiff to get him out of the way, and Plaintiff then attacked him and Mr. Greeno threw him to the ground. *Id.*

Ms. Young's statement describing the incident stated that after being scolded by Plaintiff for disobeying his instruction to stop taking orders at the drive-thru window, Mr. Greeno said "Fuck you" to Plaintiff. [Dkt. #25, Ex. A-3]. Ms. Young further stated that Plaintiff, in response, "got in [Mr. Greeno's] face," and yelled "hit me" repeatedly. *Id.* Ms. Young stated that Mr. Greeno then hit Plaintiff and the two began wrestling. *Id.*

Considering these statements and the McDonald's policy against fighting, Ms. Lisella believed that Plaintiff, particularly due to his role as Second Assistant Manager, had acted inappropriately and even though Plaintiff claimed he did not make the first physical move, according to McDonald's policy Plaintiff should have removed himself from the situation and, if necessary, called the police. [Dkt. #25, Def. Rule 56(a) Stmt., Ex. A, Lisella Decl. ¶ 25]. Both Mr. Greeno and Plaintiff

were terminated as McDonald's employees because of the incident. [Dkt. #25, Def. Rule 56(a) Stmt. ¶¶57, 62].

When Plaintiff discussed his termination with Ms. Lisella, Ms. Lisella stated the violation of the "no tolerance on fighting policy" as the reason for Plaintiff's termination. *Id.* at ¶57. Plaintiff told her about the racial slur and made to him by Mr. Greeno. [Dkt. #34, Pl. Mem. in Opp. to Def. Motion for Summary Judgment, #3, Ex. B, Greenfield Dep. at 173:13-25].

C. Plaintiff's Claim of Discrimination

Plaintiff bases his claim of discrimination on the fact that prior to his termination, two crew members of a different race, both not "African-American or black," had been involved in a physical altercation and were suspended but not fired. [Dkt. #25, Def. Rule 56(a) Stmt. ¶64]. The two employees, Pedro Garcia, of Hispanic descent, and Kevin Lee, of Asian descent, were both crew members at the time of their altercation. *Id.* at ¶67. Mr. Garcia jumped on Mr. Lee in a walk-in refrigerator outside the view of customers and employees. [Dkt. #34, Pl. Mem. in Opp. to Def. Motion for Summary Judgment, #3, Ex. B, Greenfield Dep. at 182]. Neither Mr. Lee nor Mr. Garcia was terminated for violating McDonald's policy on fighting. [Dkt. #34, #12 Pl. Stmt. of Disp. Facts, ¶35]. Plaintiff denies that McDonald's maintains a no-tolerance stance on fighting on the basis that in this incident two employees were permitted to retain employment after their physical altercation. [Dkt. #34. #11. Pl. Resp. to Def. Rule 56(a) Stmt., ¶12].

On January 11, 2010, Plaintiff filed this action alleging that Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. On February 28, 2011, Defendant filed a motion for summary judgment to dismiss the claim. Currently pending before the Court is a motion for summary judgment pursuant to Fed. R. Civ. P. 56(c).

### III. Standard of Review

"The standards governing summary judgment are well settled." *Ford v. Reynolds*, 316 F.3d 351, 354, 379 (2d Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford*, 316 F.3d at 354. "[T]he burden on the moving party may be discharged by 'showing' - that is point out to the district court - that there is an absence of evidence to support the nonmoving party's case." *PepsiCo. Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (internal citations omitted). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be

sufficient to support a jury verdict in its favor." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002).

The Court must "construe the evidence in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in its favor." *Huminski v. Corsones*, 396 F.3d 53, 69-70 (2d Cir. 2004) (internal citations omitted). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (internal citations omitted).

## IV. Defendant's Motion for Summary Judgment

### A. Count One: Race Discrimination under Title VII

Plaintiff brings this employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Title VII makes it unlawful for an employer to discriminate against an employee because of the employee's race or color. 42 U.S.C. § 2000e. Plaintiff asserts that his employer, McDonald's, illegally terminated him from his job on the basis of his race and color after he was physically assaulted by a co-worker. Further, Plaintiff alleges that other similarly situated employees, who were neither black nor African American, were previously involved in a physical altercation but were not similarly disciplined. Plaintiff seeks damages for the Defendant's alleged discriminatory conduct.

Direct evidence of discrimination consists of "evidence of conduct or statements by persons involved in the decision making process that may be

viewed as directly reflecting the alleged discriminatory attitude." *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992); *see also Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1185 (2d Cir. 1992) ("Strictly speaking, the only 'direct evidence' that a decision was made because of an impermissible factor would be an admission by the decision maker such as 'I fired him because he was too old'"). As no direct evidence of discrimination exists here, this discrimination claim is analyzed under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802-03 (1973); *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (analyzing a claim of discrimination on the basis of race under Title VII under the burden-shifting analysis outlined in *McDonnell Douglas*); *Goodwine v. Conn. Dep't of Children & Families*, No. 3:08cv532, 2011 U.S. Dist. LEXIS 3505, at *12 (D. Conn. Jan. 14, 2011)(reviewing a claim of disparate treatment on the basis of race under Title VII under "the familiar burden-shifting framework set forth in *McDonnell Douglas*").

In order to establish a *prima facie* case of race or color discrimination under this method, a plaintiff must show that: (1) he is a member of a protected class; (2) he was performing his duties satisfactorily; (3) he was subject to adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Graham*, 203 F.3d at 38. The Second Circuit has characterized the "evidence needed to establish this initial burden as 'minimal' or '*de minimis*'." *Zimmerman v. Associates of First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (emphasis in original). If a plaintiff establishes a *prima facie* showing, "the burden shifts to the

defendant, which is required to offer a legitimate non-discriminatory rationale for its actions." *Holcolmb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). If defendant successfully articulates a legitimate, non-discriminatory reason for the adverse employment action, plaintiff "may no longer rely on the presumption of discrimination raised by the prima facie case," *Holcolmb*, 521 F.3d at 141, but must demonstrate that the legitimate non-discriminatory reason for the termination offered is pretextual. *Graham*, 230 F.3d at 41.

Here, Plaintiff has established a *prima facie* case of discrimination. The parties do not dispute that Plaintiff is an African American male and therefore is a member of a protected class. It is also undisputed that the Plaintiff's work performance was satisfactory, as Plaintiff began as a crew member and was ultimately promoted to Second Assistant Manager. Plaintiff suffered an adverse employment action when the Defendant terminated Plaintiff's employment on December 27, 2007. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted) (holding that an adverse employment action occurs upon a materially adverse change in terms and conditions of employment, and includes termination of employment).

Lastly, Plaintiff's adverse employment action occurred under circumstances giving rise to an inference of discrimination. Plaintiff has asserted that he was the only African American employee employed by the Defendant at this McDonald's branch. [Dkt. #34, #12, Pl. Stmt. of Disputed Facts ¶1]. Additionally, Plaintiff alleged that he fought Greeno in self-defense. Finally, he alleges that employees previously involved in a similar physical altercation in

violation of McDonald's policy against fighting in the workplace and who were neither African American nor black were not terminated. *Id.* at ¶33-34. These facts are sufficient to satisfy the *di minimis* standard for the plaintiff's *prima facie* case of discrimination required by the Second Circuit. *Zimmerman*, 251 F.3d at 381.

It should be noted that although outside of his discrimination claim, Plaintiff asserts that Mr. Greeno called him a "nigger" during their altercation, *Id.* at ¶ 13, this comment does not provide evidence of a discriminatory motive on the part of McDonald's managers. "Stray remarks by non-decision makers or by decision-makers unrelated to the decision process are rarely given weight, particularly if they were made temporally remote from the date of decision" *Tutko v. James River Paper Co., Inc.*, No. 3:96CV1256, 1998 U.S. Dist. LEXIS 20614 at *13 (D. Conn. Sept. 29, 1998) (noting that "the Second Circuit has repeatedly affirmed summary judgment in cases with far more egregious remarks by decision makers than those alleged here") (citing *Ezold v. Wolf, Block, Schorr, and Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) (affirming summary judgment where the decision maker allegedly said that "the salary workforce [. . .] was older, had been around too long, made too much money and enjoyed too many benefits"). Here, Mr. Greeno, a subordinate, had no input on McDonald's decision to terminate Plaintiff's employment. [Dkt. #25, Def. Rule 56(a) Stmt. ¶ 24]. Because Plaintiff did not supply any evidence of prior incidents involving other co-workers or McDonald's management, Mr. Greeno's alleged racial slur during the altercation cannot constitute evidence of discrimination on the part of the Defendant.

As the Plaintiff has established a *prima facie* case, the burden then shifts to the Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant's proffered non-discriminatory reason for the adverse employment action is Plaintiff's alleged violation of company policy, stemming from his physical altercation with Mr. Greeno. Specifically, Defendant McDonald's alleges that Plaintiff violated the McDonald's Promise, a company policy "not [to] fight with anyone, even if [. . .] provoked [, and to . . .] find other ways to resolve conflict without using physical force, even if [an employee] must enlist help from the police." *Id.* at ¶¶14, 57. Defendant asserts that Plaintiff knew of the policy when he signed an Acknowledgment and Affirmation to Comply with Policies agreeing to comply with all of McDonald's policies and procedures during his orientation. *Id.* at ¶7 Because a "violation of a company policy is a legitimate, nondiscriminatory reason for an employee's termination," Defendant's assertion that Plaintiff's violation of a company policy against fighting lead to his termination establishes a legitimate non-discriminatory reason for the adverse employment action. *Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 65 (2d Cir. 1997) (holding that violation of defendant's "no fraternization" policy constituted a legitimate non-discriminatory reason for terminating plaintiff's employment); *Vasquez v. Claire's Accessories, Inc.,* 392 F. Supp. 2d 342 (D. Conn. 2005) (stating that violation of defendant's after hours policy could constitute a legitimate non-discriminatory basis for a decision to terminate employment); *Coltin v. Corp. for Justice Mgmt. Inc.,* 542 F. Supp. 2d 197 (D. Conn. 2008) (finding that the defendant

articulated a legitimate non-discriminatory basis for its decision to determinate the plaintiff where the defendant alleged that the termination was based on a use of the services of a client in violation of company policies).

As Defendant articulated a legitimate, non-discriminatory reason for the adverse employment action, Plaintiff can only succeed by demonstrating that the Defendant's proffered reason was merely a pretext, and that the real motivation for the decision was illegal discrimination. *McDonnell Douglas*, 411 U.S. at 802. Pretext can be established "either directly by showing 'that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Johnson v. Conn.*, No. 3:10cv0175, 2011 WL 2947036, at *56 (D. Conn. July 20, 2011) (citing *Weiss v. JP Morgan Chase & Co.*, 332 F. App'x. 659, 661 (2d Cir. 2009)).

As evidence of pretext, Plaintiff alleges self-defense and disparate treatment. In his statement, the Plaintiff admits that Mr. Greeno "walked up to the front counter proceeded to check himself out using bad language ." [Dkt 25, Ex. A-1]. Rather than disengaging, Plaintiff admits that he "told him if he checks out not return." *Id.* In response, Plaintiff states that Greeno walked back toward him and bumped into Plaintiff and used profanity and made a racial slur. Once again, Plaintiff failed to disengage, instead he escalated the situation by telling Greeno to "leave out of the store." *Id.* Plaintiff admits further that Greeno placed his hands on his chest. Plaintiff admits that he continued to escalate the verbal altercation telling Greeno "to leave again and do not put your hands on me again." *Id.* Plaintiff admitted that he would have reacted in kind in response to

Greeno's physical aggression when he stated Greeno "grabb[ed] me around my neck before I could react". *Id.* The verbal altercation, which escalated into a physical altercation, occurred in front of McDonald's employees and customers. Greenfield Dep. at 102-103. By his own statement Plaintiff admits that he participated in the verbal altercation rather than diffusing it. Plaintiff has not raised a genuine issue of material fact as to whether he violated McDonald's conflict avoidance and anti-fighting policies. *See Sanchez v. Conn. Natural. Gas. Co.,* 421 Fed.Appx. 33 (2d Cir. 2011) (holding that plaintiff "failed to offer evidence from which a reasonable jury could infer that the legitimate non-discriminatory reason for discharge offered by defendant, that his discharge was warranted when his later payment arrangements for a fellow employee as well as one of his tenants violated multiple company policies-- was a pretext for discrimination") (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)); *see also Pacenza v. IBM Corp.*, 363 Fed.Appx. 128 (2d Cir. 2010) (holding that employer's proffered reason for firing employee with post-traumatic stress disorder (PTSD), because he violated company policies by accessing sexual materials on the internet while at work, was legitimate and nondiscriminatory and was not shown to be pretext for disability discrimination); *Williams v. Consolidated Edison*, 255 Fed.Appx. 546 (2d Cir. 2007) (holding that employer's proffered reason for adverse employment action was not a pretext for discrimination where employee made statements referring to the possibility of driving a truck into the trailers of employer's facility and to going "postal" at work in violation of employer's zero tolerance policy regarding threats of violence in the workplace). Accordingly, a reasonable jury

could not find that McDonalds used Plaintiff's role in the altercation as pretext for racial discrimination.

Finally, Plaintiff claims in support of his claim of pretext that two similarly situated employees, Mr. Lee and Mr. Garcia, were not terminated despite engaging in similar activity in violation of the company policy against fighting. [Dkt. #25, Def. Rule 56(a) Stmt. ¶64]. In order to be similarly situated, a plaintiff must show he was "similarly situated in all material respects" to the individuals with whom he seeks to compare himself with. *Shumway*, 118 F.3d at 64. In *Graham*, the Second Circuit expressly declined to adopt the Sixth Circuit standard for "similarly situated" requiring that the comparators must have dealt with the same supervisor. 230 F.3d at 40, n. 1. Instead, the Second Circuit emphasized that "what constitutes 'all material respects' therefore varies somewhat from case to case.'" *Id.* at 40. Accordingly, the Second Circuit held that a finding of "similarly situated in all material respects" must be judged based on "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham*, 230 F.3d at 40. The Second Circuit further explained that "the standard for comparing conduct "requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Graham*, 230 F.3d at 40. (citation omitted).

Applying the standard as articulated by the Second Circuit, it is apparent that Plaintiff has not met his burden of establishing that he was "similarly

situated" to his comparators. Plaintiff asserts that although his position as Second Assistant Manager was different than that of Mr. Lee and Mr. Garcia who were regular crew members, Plaintiff and his comparators were all subject to the same McDonald's company policy against fighting in the workplace. [Dkt. #34, #12, Pl. Stmt. of Disputed Facts ¶39]. Defendant, however, asserts that Plaintiff's role as a supervisor imposed upon him a heightened burden regarding the workplace policy against fighting, thereby placing him in a different position than Mr. Lee and Mr. Garcia as crew members. [Dkt. #25, Def. Rule 56(a) Stmt.¶70]. Even construing the facts in a manner most favorable to the non-moving party, the parties have raised an issue of disputed fact regarding the nature of Plaintiff's duty under the workplace policy in comparison to the duties of Mr. Lee and Mr. Garcia, his comparators.

Even assuming arguendo, however, that Plaintiff and his comparators were subject to the same workplace standards, Plaintiff cannot sustain his burden of establishing that Defendant's proffered legitimate non-discriminatory reason is pretextual because his conduct was not of comparable seriousness to that of Mr. Lee and Mr. Garcia. In comparing conduct under the "comparable seriousness" standard, the Second Circuit has distinguished based on factors indicating different levels of severity. For example, in *Cruz v. Coach Stores, Inc.*, the Second Circuit held that offensive behavior involving verbal exchanges is not of comparable seriousness to physical altercations. 202. F.3d 560, 568 (2d Cir. 2000). Similarly, in *Smith v. New Venture Gear, Inc.*, the Northern District of New York held that a verbal threat made outside of the plant was not of comparable

18

seriousness to "an actual physical altercation during work hours inside the plant." No. 5:00-CV-1151, 2008 WL 200015, at *9 (N.D.N.Y Jan. 22, 2008).

Here, the fight between Mr. Garcia and Mr. Lee took place in McDonald's refrigerator outside of the view of customers and other McDonald's employees. [Dkt. #25, Def. Rule 56(a) Stmt. ¶ 68]. However, the altercation between Plaintiff and Mr. Greeno occurred in full view of customers and in front of other McDonald's employees and customers played a role in dispersing the fight. *Id.* at ¶¶ 37-39. Moreover, Plaintiff's involvement in a physical altercation as a supervisor is more disruptive to the overall stability of the workplace than an altercation involving non-management level employees. *See Hagans v. Budd Co.*, 597 F.Supp. 89 (D.C.Pa. 1984) (holding that "fighting with an employee is not comparable to fighting with a supervisor because the latter conduct significantly undermines management's ability to direct the activities of the workforce effectively"). Since the two acts are likely not of comparable seriousness, Plaintiff has not satisfied his burden in establishing that Defendant's legitimate non-discriminatory reason for termination was pretextual. It is also notable that the Plaintiff did not employ alternative dispute resolution techniques. Rather than disengaging and deescalating the situation by remaining silent and allowing Greeno to leave, he engaged Greeno and escalated the situation by telling Greeno not to return if he checked-out himself, not to put his hands on him and to leave, all in the presence of customers and other employees.

## V. Conclusion

The facts presented by Plaintiff, taken as true, do not present any issue of material fact for which a reasonable jury could find in his favor. Plaintiff has not presented sufficient evidence to discredit the Defendant's proffered legitimate, non-discriminatory justification for his termination by proving that racial discrimination was the real reason for his termination. Accordingly, summary judgment as to Plaintiff's Title VII claim (Count One) should be GRANTED.

                                                               IT IS SO ORDERED.


                                                                  /s/
                                             Vanessa L. Bryant
                                             United States District Judge


Dated at Hartford, Connecticut: September 1, 2011.